Julian Antonio CASTILLO, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–98–00416–CR.

Court of Appeals of Texas,
Austin.

Nov. 12, 1999.

Michael M. Machado, Steven N. Harkiewicz, San Antonio, for Appellant.

Arthur Cappy Eads, Dist. Atty., James T. Russell, Administrative Asst. Belton, for State.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and ONION.*

JOHN F. ONION, Jr., Justice (Retired).

Appellant Julian Antonio Castillo was charged by indictment with the felony offense of intentionally and knowingly causing serious bodily injury to a child. *See* Tex. Penal Code Ann. § 22.04(a)(1) (West 1994). The jury convicted appellant of the lesser included offense of reckless injury to a child and assessed his punishment at 20 years' imprisonment and a fine of $10,-000.

## ISSUES

Appellant advances three issues on appeal. First, appellant challenges the legal sufficiency of the evidence to sustain the conviction. Second, appellant urges that the trial court egregiously erred by adding a theory of prosecution ("shaking") that was not supported by the indictment when charging the jury on the lesser included offenses of reckless injury to a child and injury to a child by criminal negligent. Third, appellant argues that he was deprived of his constitutional right to the effective assistance of counsel when counsel failed to object to the jury instructions.

## THE ACCUSATION

Appellant was charged under section 22.04(a)(1) of the Penal Code, which provides in pertinent part:

> (a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual:
>
> (1) serious bodily injury.

Tex. Penal Code Ann. § 22.04(a)(1) (West 1994).[1]

The culpable mental states are statutorily defined. *See* Tex. Penal Code Ann. § 6.03 (West 1994). Moreover, culpable mental states are classified according to relative degrees, from highest to lowest as follows: (1) intentional; (2) knowing; (3) reckless; (4) criminal negligence. *See* Tex.Code Crim. Proc. Ann. § 6.02(d) (West 1994). "Reckless" or "recklessly" is a less-

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. An offense under section 22.04(a)(1) is a felony of the first degree when the conduct is committed intentionally or knowingly. When the conduct engaged in is "recklessly" it shall be a second degree felony. *See* Tex.Code Crim. Proc. Ann. § 22.04(e) (West 1994). An offense under section 22.04(a) committed with criminal negligence is a state jail felony. *See* Tex.Code Crim. Proc. Ann. § 22.04(g) (West 1994).

er culpable mental state than "intentionally" and "knowingly." *See Rocha v. State,* 648 S.W.2d 298, 302, 304 (Tex.Crim.App. 1982); *Zuliani v. State,* 903 S.W.2d 812, 816 n. 2 (Tex.App.—Austin 1995, pet. ref'd). And "criminal negligence" is a lesser culpable mental state than "recklessly." *Rocha,* 648 S.W.2d at 303; *Ormsby v. State,* 600 S.W.2d 782, 784 (Tex.Crim.App. 1979).

The one-count indictment alleged in pertinent part that appellant:

[d]id then and there intentionally and knowingly cause serious bodily injury to Triston Castillo, a child 14 years or younger by then and there striking the child with a deadly weapon, to wit: the defendant's hands or by striking the child's head against a deadly weapon, to wit: a wall or a floor.

■ The indictment charged a first degree felony when it alleged the culpable mental states of intentionally and knowingly. The State was not required to plead the precise way in which appellant caused serious bodily injury to the child. *See Bohnet v. State,* 938 S.W.2d 532, 535 (Tex. App.—Austin 1997, pet. ref'd). By including a more specific description, the State undertook the burden of proving the specific allegations to obtain a conviction. *Id.* With this background we turn to the facts developed at trial.

### FACTS

At the June 1998 trial, 22–year–old Christine Lopez, mother of the child victim, testified that she lived in Luling with her parents; that she met appellant at an Austin club in June or July 1996; that, when they began dating, he told her he was divorced; that she became pregnant and gave birth to Triston Castillo on February 4, 1997, in Austin's Seton Hospital; that the baby boy was born prematurely and remained in the hospital for two-and-a-half months; and that upon, release, the child was on an apnea monitor for approximately seven months.

Lopez reported that in October 1997 appellant wanted her and their child to visit him. He came to Luling and took them to his small apartment in Killeen. Appellant was in the United States Army and stationed at Fort Hood. On the evening of October 8, 1997, Lopez put Triston down. She and appellant watched television. About 2:30 a.m. on October 9, 1997, Lopez took a shower before retiring. While showering, she heard Triston cry out loudly. When she came out, she found appellant and Triston on the living room couch. When she inquired what happened, appellant simply responded that Triston had awakened. Triston appeared to her to be in a daze. His eyes were open but he "wasn't looking at anything." Later, Triston's mouth looked like it was "seizing" and he went limp. Appellant placed a bottle in Triston's mouth and went to bed. He said that he did not know what was wrong with the child. Appellant declined to take the child to a hospital.

Later that morning, appellant reported for military duty. When he came home for lunch, Lopez demanded that they take Triston to a hospital. They drove to King's Daughters Hospital. There, upon Lopez's insistence, appellant told her that Triston stopped breathing the night before and that he (appellant) shook him (Triston) "a little bit." Triston was later transferred to the Scott and White Hospital. There Lopez told Detective Scott Dickson that appellant had told her that the baby turned blue so he shook the baby. This was after the doctors told them that Triston had shaken baby syndrome and wanted a reason for what happened. Lopez stated that at the time of the incident she saw no blood, knots, or other marks on Triston, and did not hear any "slams" or loud noise in the small apartment indicating anything hitting the floor or the wall.

Detective Scott Dickson of the Killeen Police Department testified that appellant gave three separate statements. The first one, given on October 12, 1997, stated that while Lopez was showering, appellant tried

to move Triston off of the bed, that Triston became stiff and his mouth turned blue, that appellant shook the child two or three times to start his breathing, that the child went limp, let out a funny noise, that appellant pinched the child's nose and blew into the child's mouth. The child began crying and soon appeared normal in his movements.

On October 30, 1997, appellant gave a second statement in which he stated that Triston could have hit his head on the headboard of the bed when Triston was being shaken, but appellant did not remember that happening or hearing the child hit anything.

On November 4, 1997, appellant gave a third statement in which he admitted that while he was shaking Triston, the child slipped out of his hands, hit the headboard and fell to the floor limp.

The State's last witness was Dr. Deborah Douty, associated with Scott and While Hospital for 17 years and board certified by the Academy of Pediatrics. Dr. Douty saw Triston at 6:00 p.m. on October 9, 1997, upon his arrival at Scott and White. The records received from the Kings's Daughters Hospital reflected that Triston was lethargic, had abnormal neurological findings, and had one eye that was deviated in an abnormal fashion. All of this was indicative of trauma to the brain. A CT scan had shown blood throughout the subdural space in the brain. A MRI performed at Scott and White showed that the blood was recent blood.

Dr. Douty stated that an examination of Triston showed "no evidence of skin bruising or swelling," but there were multiple small retinal hemorrhages in both eyes and other injuries consistent with a deceleration-type injury. The doctor explained that a deceleration is "where the head is moving in a fast accelerating pattern and suddenly stops." Triston's injuries were characteristic of the type of injury sustained when a child, usually under the age of a year, is shaken back and forth at a very rapid rate of speed. Dr. Douty ex-

plained that the injury does not require that the head actually hit a fixed object because the damage can "come from" the shaking mechanism. Dr. Douty found that Triston's injuries were totally consistent with a shaking-type injury and found no evidence that his head actually hit an object. She admitted that finding no external injury did not rule out the head having hit an object.

The type of force necessary to have caused Triston's injuries, Dr. Douty explained, would be the force of a child of that weight being dropped from a two or three-story window and hitting its head on the ground; that a fall down a flight of stairs or a fall from a one-story window would not have caused such injuries. Dr. Douty explained that a fall on his head would not have caused Triston's injuries nor would a drop from the ceiling onto a bed frame have caused the deceleration needed to cause the injuries. The doctor's opinion would be the same if Triston had struck the headboard as appellant admitted. Dr. Douty stated that Triston's injuries were serious bodily injuries in that they were life threatening, and that he would have died without medical intervention.

After the State rested, appellant called several defense witnesses including Michael Drake, appellant's friend in the army. Drake testified that appellant told him that when the child had difficulty breathing, appellant became scared and administered CPR, and then everything seemed fine; that when the child's breathing stopped, appellant shook the child and the child slipped out of his hands and hit the headboard.

The 23–year–old appellant testified again and again that he did not intentionally injure or harm his son. He related that he had not taken care of a baby enough to know a baby's patterns; that Triston, while asleep, appeared to try to cry and could not and started to turn blue; that he shook the child to get a response and to

start it breathing; that the child went limp and slipped out of his hands, hit the headboard and fell to the floor; and that he gave the child mouth to mouth resuscitation and the child "came to." Appellant admitted that he shook the child back and forth three or four times before the child went limp and slipped or fell out of his hands. Appellant expressly denied that the child hit or struck a wall.

We turn first to appellant's second issue—that the trial court fundamentally erred in enlarging the theory of prosecution to one unsupported by the indictment when it charged the jury on the lesser included offenses of reckless injury to a child and criminally negligent injury to a child.

## THE JURY CHARGE

■ In the instant case, at the conclusion of the guilt/innocence stage of the trial, appellant requested[2] jury instructions on the lesser included offenses of recklessly causing injury to a child and causing injury to a child by criminal negligence.[3] The prosecutor objected to the inclusion of such jury instructions on the basis that the evidence did not raise the issues. When the trial court decided to include the requested instructions, the prosecutor acceded to the trial court's request to have the prosecutor revise the charge and "put that in there for me." The record later reveals that before the charge was read to the jury, both parties told the trial court they had "no objections" to the charge.

The charge first submitted the offense of injury to a child exactly as alleged in the indictment. After defining "recklessly," the charge then submitted to the jury the following:

Now bearing in the mind the foregoing instructions and definitions, if you find from the evidence beyond a reasonable doubt that on or about the 9th day of October, 1997, in Bell County, Texas, the defendant, JULIAN ANTONIO CASTILLO, did then and there recklessly engage in conduct that caused serious bodily injury to Triston Castillo, a child younger than 14 years of age, by then and there *shaking* or striking the said Triston Castillo with a deadly weapon, to wit: the defendant's hands, or by striking the child's head with a deadly weapon, to-wit: a wall or floor, then you will find the defendant guilty of the lesser offense of recklessly causing serious bodily injury to a child. But if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and next consider whether the defendant is guilty of the lesser offense of causing serious bodily injury to a child by criminal negligence.

(Emphasis added.)

The foregoing submission involved the lesser included offense of which the jury convicted appellant. It is observed that the charge submitted the theory of "shaking" in the disjunctive as an additional manner and means of injuring the child to those means alleged in the indictment.[4] It is clear that "shaking" more closely conformed to the facts developed at trial than the manner and means specifically alleged in the State's pleadings.

2. Appellant did not present written requested charges nor dictate the requested charges to the court reporter in the presence of the trial court. *See* Tex.Code Crim. Proc. Ann. art. 36.15 (West Supp.1999). He did "request" the jury charges in the form of a complaint about their omission from the trial court's proposed charge. We conclude that this was a sufficient objection to the charge. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West Supp. 1999); *Bohnet,* 938 S.W.2d at 534 n. 1.

3. "An offense is a lesser included offense if: ... (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." Tex. Code Crim. Proc. Ann. art. 37.09(3) (West 1981).

4. The jury charge on the lesser included offense of injury to a child by criminal negligence also included "shaking" in the same manner.

## ENLARGING THE INDICTMENT

A defendant is to be tried only on the felony crimes alleged in the indictment. *See Abdnor v. State,* 871 S.W.2d 726, 738 (Tex.Crim.App.1994). Where the indictment facially alleges a complete offense, the State is bound by the theory alleged in the indictment. *See Fisher v. State,* 887 S.W.2d 49, 55, 57 (Tex.Crim. App.1994). This is true regardless of whether the State intended to charge that offense. *See Thomason v. State,* 892 S.W.2d 8, 11 (Tex.Crim.App.1994). The jury charge must not enlarge the offense alleged and authorize the jury to convict the defendant on a basis or theory permitted by the jury charge but not alleged in the indictment. *See Fella v. State,* 573 S.W.2d 548, 548 (Tex.Crim.App.1978).

Early on it was stated:

The rule is universal ... that the [jury] charge must be limited to the allegations in the indictment. A jury would not be authorized to convict appellant of any other offense than that specifically charged, and the court should confine the consideration of the jury in the charge to the allegations contained in the indictment.

*Emerson v. State,* 54 Tex.Crim. 628, 114 S.W. 834, 835 (1908); *see also Gooden v. State,* 140 Tex.Crim. 347, 145 S.W.2d 177, 178 (1940). "It is fundamentally wrong to authorize a conviction on any state of facts other than those which support the finding of the truth of the indictment." *Moore v. State,* 84 Tex.Crim. 256, 206 S.W. 683, 684 (Tex.Crim.App.1918); *see also Dowden v. State,* 537 S.W.2d 5, 6 (Tex.Crim.App. 1976). This is true even if no trial objection is made. *See Robinson v. State,* 553 S.W.2d 371, 374–75 (Tex.Crim.App.1977).[5]

*Morter v. State,* 551 S.W.2d 715 (Tex. Crim.App.1977), involved an injury to a child as does the instant case. The indictment alleged that the defendant caused serious bodily injury to a child. The jury

charge authorized conviction on that theory but also upon two other types of conduct proscribed by section 22.04 of the Penal Code then in existence—causing serious physical or mental deficiency or impairment or deformity. The court reviewed the matter as unassigned error and found fundamental error. *See id.* at 718.

*Barnes v. State,* 644 S.W.2d 1 (Tex.Crim. App.1983), involved a jury charge on a lesser included offense as does the instant case. The defendant was charged with murder under the theory of section 19.02(a)(1) of the Penal Code then in existence. In submitting the lesser included offense of voluntary manslaughter, the trial court authorized the jury to convict for the lesser included offense under the theory of section 19.02(a)(1) (as alleged in the indictment) or under the theory of section 19.02(a)(2) (not alleged in the indictment). The defendant was convicted of voluntary manslaughter. On appeal, the court held that a jury charge which authorized a conviction on a theory not alleged in the indictment presented error which required reversal even if no trial objection was made," *and even though the expansion of the indictment occurred in that part of the charge where the trial court instructed the jury on the lesser included offense of that alleged in the indictment." Id.* at 2 (Emphasis added.)

*Cumbie v. State,* 578 S.W.2d 732 (Tex. Crim.App.1979), reviewed several types of jury charges which authorized convictions on a theory or theories not alleged in the indictment that constituted fundamental error requiring reversal even though the error was not called to the trial court's attention. These types included: (1) when an allegation in the indictment required to be proved is omitted from the jury charge; (2) when the charge substitutes a theory of the offense completely different from the theory alleged in the indictment; (3) when

5. Even if a defendant admits his guilt, the admission must conform to the allegations in the indictment. *See Thornton v. State,* 601

S.W.2d 340, 345 (Tex.Crim.App.1979); *Douglas v. State,* 915 S.W.2d 166, 168 (Tex.App.— Corpus Christi 1996, no pet.).

the charge authorizes conviction on the theory alleged in the indictment *and* on one or more theories not alleged in the indictment; and (4) when the charge authorizes conviction for conduct which is not an offense as well as for conduct which is an offense. *Id.* at 733–35.

*Cumbie,* however, was overruled to the extent that it held that "fundamental" charge error required automatic reversal. *See Almanza v. State,* 686 S.W.2d 157, 174 (Tex.Crim.App.1985) (op. on reh'g). The *Cumbie* categories of charge error, however, remain intact, albeit every error will not be regarded as egregious under *Almanza. See Clark v. State,* 717 S.W.2d 910, 921 n. 2 (Tex.Crim.App.1986) (Clinton, J., concurring).

*Daniels v. State,* 754 S.W.2d 214 (Tex. Crim.App.1988), demonstrated that a jury charge enlarging the offense alleged can still constitute reversible error. In *Daniels,* the jury charge omitted instructions on constructive delivery of marihuana, the only theory alleged in the indictment, and authorized the jury to convict only on actual delivery, a theory not alleged. Such error was held to be egregious and one that deprived the defendant of a fair and impartial trial despite the lack of an objection. *Id.* at 222–23 (citing *Almanza).*

Consistent with the rule prohibiting a jury charge from enlarging the offense alleged in the indictment is the rule that the defendant is not entitled to a charge on a lesser included offense unless it is within the proof necessary to establish the offense alleged or charged. This is the first prong of the two-step analysis established by *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Crim.App.1981), required for the submission of a lesser included offense.[6] *See also Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993) (clarifying *Royster* as to the rational

findings of the jury); Tex.Code Crim. Proc. Ann. art. 37.09(1) (West 1981).

In *Brown v. State,* 725 S.W.2d 801 (Tex. App.—Austin 1987), the defendant was charged with injury to a child by intentionally and knowingly causing an object to strike the head of the child. The defendant sought a jury instruction on the lesser included offense of injury to a child by criminal negligence supported by trial evidence that the child fell down stairs while in the defendant's care. The trial court's refusal to so charge was upheld. The crime on which the defendant sought an instruction was "simply not included in the indictment," and was not within the proof necessary to establish the offense alleged. *Id.* at 809 ( *vacated and remanded on other grounds,* 761 S.W.2d 4, 5 (Tex.Crim. App.1988)).

The defendant in *Bohnet,* 938 S.W.2d at 532, was convicted of capital murder as charged in the indictment. He claimed on appeal that the trial court erred by refusing to submit the lesser included offenses of manslaughter and criminally negligent homicide based on trial evidence that the death of the defendant's son resulted from the reckless or negligent "shaking" of the son. This Court held that the defendant was not entitled to such instructions based merely on trial evidence, that there must be some evidence that the defendant recklessly or negligently *struck* his son in the head with his fist, hand, or unknown object as alleged in the indictment. *See id.* at 535. If given as requested, the charge would have authorized the jury to convict the defendant of a crime for which he was not indicted and would have resulted in a misinterpretation of article 37.09(1). *See id.*

We conclude that the trial court erred in enlarging the indictment by adding "shaking" as an additional manner and means of committing the charged offense when sub-

---

6. The second prong of the *Royster* test requires that there be "some evidence" in the record that would permit the jury rationally

to find that if the defendant is guilty, he is guilty only of the lesser offense. *See Rousseau,* 855 S.W.2d at 672–73.

mitting the lesser included offense instructions.

■ Having determined that there was error in the charge, we must now decide if sufficient harm was caused by the error to require a reversal, despite the lack of an objection. *See Hutch v. State*, 922 S.W.2d 166, 170 (Tex.Crim.App.1996). A jury charge error must be reviewed for harm under article 36.19 of the Texas Code of Criminal Procedure [7] as interpreted by *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1984) (op. on reh'g). As *Almanza* explains, article 36.19 separately contains standards for both fundamental error and ordinary reversible error. *See id.* at 171. Error properly preserved by an objection will require reversal "as long as the error is not harmless." *Id.* This has been interpreted to mean any harm regardless of degree. *See Hutch*, 922 S.W.2d at 171. If no proper trial objection is made, the accused must claim "fundamental" error and will obtain a reversal only if the error is egregious and creates such harm that he has been deprived of "a fair and impartial trial—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171; *see also Bailey v. State*, 867 S.W.2d 42, 43 (Tex.Crim.App. 1993).

> In both situations, the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.

*Almanza*, 686 S.W.2d at 171.

Because of the lack of objection, the instant case requires an egregious harm analysis. An examination of the charge shows that it tracked the exact allegations of the primary offense alleged in the indictment. The jury, in effect, acquitted

the appellant of that offense. The charge also submitted the lesser included offense of recklessly injuring a child and injury to a child by criminal negligence. Under these lesser included offense instructions the trial court improperly authorized conviction by "shaking," a different manner and means than alleged in the indictment. The overwhelming weight of the evidence by both the State and defense, including the medical testimony, showed that the injury to the child was by "shaking" not by "striking" in the manner described in the indictment. The State's was not held to the burden of proving what was alleged in the indictment with regard to the lesser included offenses submitted.

In his opening statement, the prosecutor told the jury that the State's medical evidence would show that the child "was severely, severely shaken and injured," and that appellant in his three statements admitted "shaking" the child. The State knew early on that the evidence was going to show "shaking," which was not alleged in the indictment. The evidence supported the prosecutor's opening statement. After "shaking" was placed in the charge regarding the lesser included offenses, the State argued to the jury:

> But I think the overwhelming best evidence in this case is the undisputed medical testimony from, you know, one of the leading physicians in the field in this area. And what she told you was what had occurred to that child was violent, repeated shaking of a magnitude that he will certainly will never admit to. But yet, the evidence is medically there.

The record does not reveal just how or why "shaking" was inserted into the charge. The State makes no claim that it was requested by appellant and was invited error. The amendment of the charge was accomplished by the prosecutor at the

---

7. *See* Tex.Code Crim. Proc. Ann. art. 36.19 (West 1981). Article 36.19 is applicable to any violation of the requirements of articles 36.14 to 36.18 of the Code of Criminal Procedure. Article 36.14 requires the trial court to

deliver to the jury "a written charge distinctly setting forth the law applicable to the case." Tex.Code Crim. Proc. Ann. art. 36.14 (West Supp.1999).

trial court's request and obviously appellant's counsel did not carefully scrutinize the charge as amended to include his request concerning lesser included offenses. Following the *Almanza* factors, we conclude that the error constituted egregious harm and that appellant was deprived of a fair and impartial trial. The second issue is sustained.

## SUFFICIENCY OF EVIDENCE

■ Appellant in his first issue has challenged the legal sufficiency of the evidence to sustain his conviction for reckless injury to a child.

The standard for reviewing the legal sufficiency of evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense charged. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Skillern v. State*, 890 S.W.2d 849, 879 (Tex.App.—Austin 1994, pet. ref'd). The standard of review is the same in both direct and circumstantial evidence cases. *See Green v. State*, 840 S.W.2d 394, 401 (Tex.Crim.App.1992); *Geesa v. State*, 820 S.W.2d 154, 155 (Tex.Crim.App.1991). All the evidence the jury was permitted, properly or improperly, to consider must be taken into account. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App. 1993), *cert. denied*, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 222 (1994); *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex.Crim. App.1991).

■ The sufficiency of the evidence to support a conviction should no longer be measured by the jury charge actually given, but rather, should be measured by the elements of the offense as defined by a hypothetically correct jury charge for the case. *See Curry v. State*, 975 S.W.2d 629, 630 (Tex.Crim.App.1998); *Malik v. State*, 953 S.W.2d 234, 239, 240 (Tex.Crim.App. 1997). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

Moreover, the jury is the exclusive judge of the facts proved, the weight to be given the testimony, and the credibility of the witnesses. *See* Tex.Code Crim. Proc. Ann. art. 38.04 (West 1979); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992). The jury is free to accept or reject any or all of the evidence presented by either party. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App.1991). The reconciliation of evidentiary conflicts is solely within the province of the jury. *See Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex.Crim.App.1995).

In the instant case, appellant was convicted of the lesser included offense of reckless injury to a child. In looking to a hypothetically correct charge as required by *Malik*, we would disregard the jury charge actually given including the improperly submitted means of "shaking." We must determine the sufficiency of the evidence to show beyond a reasonable doubt that appellant recklessly injured the child by causing serious bodily "by striking the child with a deadly weapon, to wit: the defendant's hands or by striking the child's head against a deadly weapon: to wit: a wall or floor."

There is no evidence to show that appellant struck the child with his hands. Moreover, there was no evidence to support the allegation that appellant struck the child's head against a wall and appellant expressly denied that allegation. There was some evidence that appellant shook the child and that the child went limp and slipped out of appellant's hands or that appellant let go; that the child's head may have hit a headboard or dresser; and that the child then fell to the floor. If the child fell to the floor, there is no evidence to show that the child fell on its head. There is no direct evidence that

appellant struck the child's head directly against the floor. The record does not reveal the composition of the floor and whether it was carpeted.

The mother of the child related that there were no external marks or bruises on the child's body after the incident. This was confirmed by Dr. Douty who found no medical evidence that the child's head hit an object. She explained that the injuries suffered would not have resulted simply from a fall on the child's head, being dropped from the ceiling onto a bed frame, or from a fall down a flight of stairs, or being dropped from a one-story window. The doctor related that the injuries were characteristic of and consistent with the forceful shaking of a child of the age in question.

We have carefully examined all the evidence and conclude that in viewing the evidence in the light most favorable to the jury's verdict, a rational trier of fact could not have found beyond a reasonable doubt all of the essential elements of the offense of which appellant was convicted, under a hypothetically correct charge.

We are aware, of course, of the cases holding that a defendant who requests a jury charge on a lesser-included offense and does not object to that charge is estopped from challenging the sufficiency of the evidence where the jury has convicted him of the lesser included offense. *See Reaves v. State*, 970 S.W.2d 111, 118 (Tex. App.—Dallas 1998, no pet.); *Bisco v. State*, 964 S.W.2d 29, 30 (Tex.App.—Tyler 1997, pet. ref'd); *Grant v. State*, 950 S.W.2d 450, 451 (Tex.App.—Beaumont 1997, pet. ref'd); *Taylor v. State*, 947 S.W.2d 698, 702 (Tex. App.—Fort Worth 1997, pet. ref'd); *Scott v. State*, 867 S.W.2d 148, 154 (Tex.App.— Austin 1993, no pet.); *see also State v. Yount*, 853 S.W.2d 6, 9 (Tex.Crim.App. 1993) (involving the statute of limitations). Whatever the continued viability of this rule, we decline to apply it under the peculiar factual situation of the instant case with regard to the submission of the lesser included offenses. If the legal sufficiency of the evidence were upheld, the instant case would have to be retried in view of the jury charge error. It is not likely that the State would proceed on the same indictment in view of the evidentiary facts. The first issue is also sustained.

### THE THIRD ISSUE

In view of our disposition of this appeal on jury charge error, we do not reach the third issue—the ineffective assistance of counsel claim. If there was no jury charge error, this ineffective assistance claim would loom large on the scene, given the failure to move for an instructed verdict and to object to the charge which enlarged the indictment.

The judgment is reversed and an acquittal is ordered. *See Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). The jury acquitted appellant of the primary offense alleged in the indictment, and we have concluded the evidence is legally insufficient to sustain the conviction for the lesser included offense of recklessly injuring a child by striking. This does not prevent the State from seeking a new indictment charging injury to a child and alleging a different manner and means of committing the offense such as "shaking," and trying appellant on the new indictment. *Cf. Vick v. State*, 991 S.W.2d 830 (Tex.Crim.App.1999).