

# NUMBER 13-23-00262-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ALDABERTO VASQUEZ,                                             Appellant,

v.

THE STATE OF TEXAS,                                             Appellee.

## ON APPEAL FROM THE 148TH DISTRICT COURT
## OF NUECES COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Silva**
**Memorandum Opinion by Justice Longoria**

Appellant Aldaberto Vasquez was indicted on one count of continuous sexual abuse of a young child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02(b). After a jury trial, the jury returned a verdict of guilty on the lesser included offense of aggravated sexual assault of a child, a first-degree felony. *See id.* § 22.021(a)(1)(B)(i), (2)(B). The

trial court assessed punishment at fifty years' incarceration. By one issue, appellant challenges the legal sufficiency of the evidence to support his conviction. We affirm.

## I.    BACKGROUND

In March 2017, Margarita Villareal filed a report regarding an outcry of sexual abuse made by M.R.[1], a student at the elementary school where Villareal worked as a school nurse. Villareal explained that M.R. came to the nurse's office complaining that her panties were stained with blood and that she was "having pain down there." When Villareal asked M.R. "how can I help you," M.R. began to cry and told Villareal that there was an incident with "a friend of her mom" or her mom's "boyfriend." M.R. informed Villareal that a male with "dark complexion" "touched her hard" and that it "hurt[] a lot." M.R. also explained that the male "touched her leg," "her genitalia area," and "her buttock area." M.R. did not use any names. According to Villareal, M.R. said that M.R.'s mother knew "but she didn't believe her." As a school nurse, it was Villareal's duty to report the allegations.

M.R., who was fourteen years old at the time of trial, testified that she previously lived in Robstown, Texas, with her mother and her stepfather. Though she could not recall his name, she identified appellant as her stepfather. She described her relationship with appellant as "[v]ery abusive and very sexual," explaining that appellant "would touch [her], and he would do very bad stuff." Elaborating, M.R. stated that appellant "would touch [her] on [her] middle parts, [her] thighs, [and her] upper" body, and she confirmed that "middle

---

[1] To protect the identity of the complainant, we refer to her by initials. *See* TEX. CONST. art. 1, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"); TEX. R. APP. P. 9.8 cmt. ("The rule does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases.").

part" referred to her "privates" where she "urinate[s] from." M.R. stated that appellant used his hands to touch her on her "outside" and "inside" and that it happened "a lot," agreeing that it was more than eight times.

M.R. testified that she went to the school nurse often because she was "bleeding a lot" and would sometimes have pain. She explained that she felt she could trust the nurse, so she told her that she was being touched by someone. She also explained that she had not told her mother, but that her mother found out through the report that was filed by Villareal. After the report was filed, M.R. recalls being taken to the hospital by "CPS," the Texas Department of Family and Protective Services (the Department), where she received a medical examination. She then entered the foster care system for "a few months" before going to live with her aunt. She returned to live with her mother approximately six months later.

M.R.'s mother, G.E., testified that she and appellant were in a dating relationship for approximately nine years, starting when M.R. was about six months old. During their relationship, G.E. was employed and worked varying shifts in the evening and morning hours. There were times that appellant would take care of M.R. when G.E. was at work. G.E. recalled M.R.'s school contacting her to pick M.R. up from school and she was contacted by the Department that same day when they came to her home. She, along with the Department, took M.R. to have a medical examination. M.R. was taken from G.E.'s custody that day because appellant was still living with G.E. and the Department "thought [M.R.] was in . . . danger." The Department told G.E. to remove appellant from the house, but because he was "paying the bills at the time," G.E. did not do so

3

immediately. G.E. stated that M.R. never disclosed the abuse to her.

Lilia Ramos, a former forensic examiner with the Children's Advocacy Center (CAC), where M.R. was forensicaly examined, testified that M.R. named appellant as her abuser and reported that "he touched the outside of her leg, her inner thigh, and what [M.R.] referred to as her middle part." She reported "a couple of different incidents." She explained that M.R. stated all contact was over the clothing.

Records from M.R.'s medical examination performed by a sexual assault nurse examiner (SANE) were admitted. In the records, M.R. stated that appellant had touched her under her clothes, and she indicated he touched her female sexual organ, her buttocks, and her chest. During the examination, M.R. described several instances where appellant touched her, including instances where others were aware of what was happening—such as her brother, nephew, and mother. The SANE examination revealed injuries to M.R.'s female sexual organ, including an abrasion and some redness, which were indicative of recent trauma.

Appellant testified that he "never touched [M.R.] inappropriately, and [he] never mistreated her." He further explained that the weekend before M.R.'s outcry, M.R. had spent time with her grandmother and her grandmother's boyfriend, a dark-complected male. Appellant stated he believed that the grandmother's boyfriend may have been the perpetrator. Appellant stated that he and G.E. had "an ugly separation" before the case happened, and he eventually met another woman, got married and started a family with her. He explained that he was unaware of the accusations against him when he left G.E. Appellant agreed that M.R. is a good child but asserted that she was lying about the

4

accusations against him.

In a single count indictment, the State alleged that, during a period that was thirty days or more in duration, appellant committed two or more acts of sexual abuse against the child complainant, M.R., who was under fourteen years of age. *See* TEX. PENAL CODE ANN. § 21.02(b). The jury returned a verdict of guilty on the lesser included offense of aggravated sexual assault of a child, a first-degree felony. *See id.* § 22.021(a)(1)(B)(i), (2)(B). The trial court assessed punishment at fifty-years' incarceration. This appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

In his sole issue on appeal, appellant challenges the sufficiency of the evidence to support his conviction. He specifically attempts to attack the credibility of M.R.'s testimony.

## A. Standard of Review & Applicable Law

An appellate court reviewing the sufficiency of the evidence to support a conviction considers all the evidence in the record, whether direct or circumstantial, and whether properly or improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). To assess whether the evidence is sufficient to support a conviction, we review all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to

5

justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917.

When reviewing the evidence under the *Jackson* standard of review, we consider whether the jury's finding of guilt was a rational finding. *Id.* at 907. We must "defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899–900 (emphasis omitted). As stated by the Supreme Court in *Jackson*, the standard of review "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Chasco v. State*, 568 S.W.3d 254, 257–58 (Tex. App.—Amarillo 2019, pet. ref'd). We do not become a thirteenth juror by re-evaluating the weight and credibility of the evidence or substituting our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Reed v. State*, 158 S.W.3d 44, 46 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Our duty as a reviewing court is to ensure that the evidence presented can actually support a conclusion that the defendant committed the crime. *See Williams*, 235 S.W.3d at 750. We will uphold the verdict unless we determine any rational factfinder would have a reasonable doubt as to any essential element. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).

The offense of aggravated sexual assault of a child is a lesser-included offense of continuous sexual abuse of a young child—the offense with which appellant was charged

6

in the indictment and that was included in the trial court's charge. *See Price v. State*, 413 S.W.3d 158, 163 (Tex. App.—Beaumont, 2013), *aff'd*, 434 S.W.3d 601 (Tex. Crim. App. 2014) ("The Legislature made aggravated sexual assault [of a child] a lesser included offense of continuous sexual abuse [of a young child] by defining [']act of sexual abuse['] to expressly include aggravated sexual assault [of a child]") (citing TEX. PENAL CODE ANN. § 21.02(c)(4), (e)(3)). A person commits aggravated sexual assault of a child if the person intentionally or knowingly "causes the penetration of the anus or sexual organ of a child by any means;" or "causes the penetration of the mouth of a child by the sexual organ of the actor;" and "the victim is younger than 14 years of age." TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (a)(2)(B); *see Castillo v. State*, 7 S.W.3d 253, 261 (Tex. App.—Austin 1999, pet. ref'd) (conducting legal sufficiency review of lesser-included offense conviction by examining evidence through prism of hypothetically correct charge for lesser-included offense).

Physical evidence is not necessary to affirm a sexual assault conviction. *See Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (stating physical evidence is not required to affirm a sexual assault conviction when the child victim provides ample testimony to establish that a sexual assault occurred). Further, the uncorroborated testimony of a child seventeen years of age or younger is sufficient to support a conviction for aggravated sexual assault of a child. TEX. CODE. CRIM. PROC. ANN. art. 38.07; *Ryder v. State*, 581 S.W.3d 439, 449 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Courts liberally construe the testimony of child sexual abuse victims. *Lee v. State*, 176 S.W.3d 452, 457 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d

620 (Tex. Crim. App. 2006); *see Bautista v. State*, 605 S.W.3d 520, 525 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

**B.    Analysis**

Appellant concedes that, under the Texas Code of Criminal Procedure, the complainant's uncorroborated testimony alone is enough to support a conviction for child sexual abuse. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1). However, appellant asks this Court not to follow Article 38.07 because, as he argues, M.R.'s credibility and truthfulness were at issue. Appellant does not cite any authority to support his position that we can and should decline to follow longstanding precedent because the appellant believes the child victim was lying. *See* Tex. R. App. P. 38.1(i) (requiring a clear and concise argument with appropriate citations to authorities). Appellant is essentially asking this Court to re-weigh the evidence and determine if M.R.'s testimony was credible to support his conviction. We cannot do so. *See Williams*, 235 S.W.3d at 750. The jury is the ultimate authority in determining credibility of the witnesses and weighing the evidence at trial. *See Bautista*, 605 S.W.3d at 526 (citing *Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

Here, the jury heard M.R.'s testimony providing her account of appellant sexually assaulting her by touching the "inside" of her sexual organ. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B). The jury also heard testimony that there was medical evidence to support M.R.'s account—specifically trauma-related abrasions to M.R.'s female sexual organ. Even with appellant's testimony asserting his innocence and discussing possible motivations for M.R. to lie, including a bad breakup between appellant and G.E., the jury

found appellant guilty of aggravated sexual assault. *See Brooks*, 323 S.W.3d at 899 (a reviewing court must not sit as thirteenth juror, disagree with the jury's "weighing of the evidence," or "disagree[] with a jury's resolution of conflicting evidence"). We conclude that, viewing the evidence in the light most favorable to the prosecution, the evidence is legally sufficient to support appellant's conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1); *Ryder v. State*, 514 S.W.3d 391, 396 (Tex. App.—Amarillo 2017, pet. ref'd); *Chasco*, 568 S.W.3d at 258.

## III.    CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
29th day of August, 2024.

9