# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00785-CR

### Albert Mitchell, Jr., Appellant

### v.

### The State of Texas, Appellee

---

### FROM THE 27TH DISTRICT COURT OF BELL COUNTY
### NO. 21 DCR85169, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Albert Mitchell appeals from his convictions for aggravated assault with a deadly weapon and injury to an elderly individual raising four issues. He argues that (1) the evidence is insufficient and that the trial court erred in (2) refusing to give self-defense instructions, (3) allowing the State to amend the indictment, and (4) admitting hearsay evidence. We will affirm the judgments of the trial court.

## BACKGROUND

Mitchell, age 69, after being released on parole, moved back into the family house where his brother Bobby, age 65, lived. On the first night, Bobby pulled a knife on Mitchell. On the second night, the brothers got into the fight that underlies the convictions in this case. Bobby walked to the police station afterwards to report that Mitchell had assaulted him. Officers noted Bobby had a fat lip, a busted nose, blood in his ear, hemorrhaging in his eye, and multiple

injuries to his scalp—injuries severe enough to warrant a trip to the emergency room. Bobby told the officers that they could find Mitchell at the house. Officers visited the house to talk to Mitchell. Mitchell had sustained a cut to his forearm and a slice to the webbing of his hand between his index finger and thumb, also severe enough to warrant a trip to the emergency room.

According to Bobby, he came home from playing cards and having a single beer around midnight and entered the kitchen to feed his dogs. He asked Mitchell, who was cleaning, why he moved the dog food. And Mitchell, instead of answering, beat him up with his fists and cut him with a knife. According to Mitchell, Bobby came home drunk and was angry that Mitchell was cleaning so late. The two exchanged words, then got into a fistfight.

A grand jury indicted Mitchell on charges of aggravated assault and injury to an elderly person. Each charge carried a deadly weapon allegation. At a jury trial, the State presented, among other evidence, testimony from the officers at the police station, the officers who had gone to the house, and Bobby; body-cam video of the officers' interactions with Bobby at the station and Mitchell at the house; body-cam video of the officers' exploration of the crime scene and recovery of the bloody knife from the kitchen trash can; and photos showing injuries to both men as well as medical records describing their injuries.

Mitchell requested a self-defense charge; the trial court refused to give it. The jury convicted Mitchell on both counts and made the affirmative deadly weapon findings. Pursuant to a plea bargain regarding punishment, Mitchell pleaded true to the two enhancement provisions for each offense, and the trial court assessed punishment at 25 years' confinement on each offense (the minimum under the habitual-offender statute), to run concurrently. *See* Tex. Penal Code § 12.42(d).

## ANALYSIS

### *Sufficiency of the Evidence*

Mitchell argues that the State failed to prove that the assault was aggravated or to prove the deadly weapon allegations because it failed to prove he used or exhibited the knife.[1]

### *Standard of Review*

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979). In assessing the sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

---

[1] Mitchell does make two additional arguments. Mitchell argues that the evidence for injury to an elderly individual is insufficient because Bobby testified he was "in his fifties." But Bobby later clarified that he was 65. As the factfinder, the jury was entitled to believe or disbelieve all or part of Bobby's testimony because it had the opportunity to observe his demeanor and appearance. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). He also argues that (even if Bobby was 65), he himself was 69 at the time of the fracas and that "it strains credulity to think that the legislature meant to punish an individual for injuring an elderly individual who was the individual's junior." However, the plain language of the statute does not require the perpetrator to be of a certain age, and Mitchell does not argue that punishing an elderly individual for injuring another elderly individual "would lead to absurd consequences that the Legislature could not possibly have intended." *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). Nor do we find the consequence to be such.

3

*Application*

As is relevant here, a person commits an aggravated assault if the person intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a deadly weapon during the commission of the assault. Tex. Penal Code §§ 21.01(a)(1), 22.02(a)(2). And a person commits injury to an elderly individual (a person 65 years or older) if the person intentionally, knowingly, recklessly, or with criminal negligence, causes an elderly individual bodily injury. *Id*. § 22.04(a)(3).

Each count in the indictment alleged that Mitchell intentionally, knowingly, and recklessly caused bodily injury to Bobby in two ways: by stabbing him with a knife, and by striking him with his hand. And each count alleged that Mitchell used or exhibited a deadly weapon (a knife) during the commission of the assault. The injury to an elderly individual count also alleged Bobby was an individual 65 years of age or older.

Mitchell does not complain about the sufficiency of the evidence to prove he, with the requisite mental state, caused Bobby bodily injury by striking him with his hand. Nor does he argue the knife could not qualify as a deadly weapon. *See id*. § 1.07(a)(17)(B) ("deadly weapon" means "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury"); *Davis v. State*, 22 S.W.3d 638, 641 (Tex. App.—Waco 2000, pet. ref'd) (steak knife can qualify as deadly weapon). Rather, Mitchell asserts that the State failed to prove he used or exhibited the knife.

"Used a deadly weapon" during the commission of the offense means "the deadly weapon was employed or utilized in order to achieve its purpose"; "exhibited a deadly weapon" means "that the weapon was consciously shown or displayed during the commission of the offense." *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). Any employment of

4

a deadly weapon qualifies if it facilitates the associated offense. *Plummer v. State*, 410 S.W.3d 855, 860 (Tex. Crim. App. 2013).

Mitchell asserts that even if he possessed the knife, "it was collateral to the assault and not used in furtherance of the assault where the heart of the assault was inflicting injury upon [Bobby] by the use of fists." In other words, the State failed to prove that he used the weapon to facilitate the assaults.

Mitchell notes that Corporal Robert Johnson's testimony that Bobby stated that Mitchell assaulted him with a knife conflicted with Johnson's call log statement that "Male did not use the knife on the complainant"; Bobby himself testified that he did not think Mitchell used the knife on him"; the wounds on Bobby's head are described in the medical records as "abrasions" rather than "lacerations"; the wound on Mitchell's hand was a laceration; and Bobby accessed the crime scene, the kitchen, before Officer Andrew Kramer and so Bobby had the opportunity to plant or manipulate the knife.

But here, the testimony and exhibits support the jury's conclusion that Mitchell used or exhibited the knife to facilitate the assault.

Bobby testified that Mitchell exhibited the knife. Mitchell "got up on top of me with a knife." He "had the knife in his hand. I don't think he used it on me, but he just had it like this and said he'll kill my mother-fucking ass." "I believe the knife hit me in the head," and "[s]cratched me." "And when I ran to the door, he pushed me from the door and then pushed me in the corner. And that's when he come on . . . with the knife right on top me. That's when he said [he was] going to kill my mother-fucking ass." Mitchell "had it on him all the time." He did not tell officers Mitchell stabbed him with a knife, "because I didn't know if I got stabbed or

5

not." Bobby identified State's Exhibit 22, the bloody knife retrieved from the trash can, as "the knife I cut food with"; he agreed it was the knife Mitchell was holding.

Body-cam footage (State's Exhibit 14) captured Bobby at the police station, reporting to Officer Carmen Davila that Mitchell "pulled a knife," "whooped the shit out of me," "had something up there at my head; I couldn't tell what it was." In the footage, Bobby's shirt and jeans are splattered with blood. Photos of the top of Bobby's head reflected fresh wounds; slash type cuts (straight lines) and other cuts, and one small wound. Officer Davila testified that the wounds on Bobby's head were "consistent with being slashed by a knife."

The knife was introduced into evidence as was a photo of it. It is a serrated steak knife; blood is concentrated on the bottom half of the blade closest to the handle, and on the handle.

We determine that based on the above evidence a rational juror could have found Mitchell used or exhibited the knife, itself a deadly weapon, to facilitate the assault. *See Plummer*, 410 S.W.3d at 864–65; *Hooper*, 214 S.W.3d at 13. We overrule Mitchell's complaint about the sufficiency of the evidence.[2]

### *Refusal to Instruct the Jury on Self Defense*

Mitchell argues that the trial court erroneously refused to instruct the jury on self-defense because some evidence tends to show the applicability of the defense to the case—the evidence that Mitchell himself had two cut wounds; Sergeant Michael Bolton conceded that the

---

[2] Mitchell urges this court to bring back factual sufficiency review which the Texas Court of Criminal Appeals jettisoned in *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). This we cannot do. We "must follow the precedents of all higher courts." *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) (recognizing vertical stare decisis is inherent in structure of hierarchical system of courts).

knife wound to his hand could have been defensive—from grabbing the knife away from Bobby; and Bobby had pulled a knife on Mitchell the night before.

*Applicable Law and Standard of Review*

The trial court must provide the jury with a written charge distinctly setting forth the law applicable to the case. Tex. Code Crim. Proc. art. 36.14. Article 36.14 "requires the trial judge to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence." *Walters v. State*, 247 S.W.3d 204, 208-09 (Tex. Crim. App. 2007). Section 9.31 sets out the justification of self-defense: "[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code § 9.31(a). Self-defense is a confession-and-avoidance defense. *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020). "Confession and avoidance is a judicially imposed requirement that requires defendants who assert a justification defense to admit, or at a minimum to not deny, the charged conduct." *Rodriguez v. State*, 629 S.W.3d 229, 231 (Tex. Crim. App. 2021). Appellate courts "do not apply the usual rule of appellate deference to trial court rulings when reviewing a trial court's decision to deny a requested defensive instruction[.]" *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). "Quite the reverse, we view the evidence in the light most favorable to the defendant's requested submission." *Id*.

If we find the trial court erred by failing to give a requested instruction, we analyze that error for "some harm." *Thanh Cuong Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005).

7

*Application*

The evidence Mitchell alludes to would support a self-defense instruction had the State not alleged he used or exhibited the knife as a deadly weapon or had Mitchell requested instructions on lesser-included offenses. When questioned by the police who went out to the house, Mitchell said Bobby is a drinker, "the man likes to drink"; Bobby came inside while he was cleaning the kitchen for a family reunion scheduled for the next day; Bobby asked him why he was up so late and cleaning; one thing led to another; and they got into a fistfight. Mitchell told the officers that he cut his hand when he hit Bobby; "I busted my hand open." He therefore admitted to assault (causing bodily injury to another) and to injury to an elderly individual (causing bodily injury to an elderly individual), as alleged in the indictment.

But no evidence, not even weak or contradicted evidence, supports a finding that Mitchell committed the offenses alleged, by using or exhibiting the knife, while defending himself. Mitchell minimized the altercation stating, "wasn't nothing big about it," and "it wasn't nothing but a little fistfight." When challenged by an officer who said, "it looked like more than that to me," Mitchell reiterated that "It wasn't nothing but a little ole fight" and "It wasn't nothing but a fist fight." *Cf. Gamino v. State*, 537 S.W.3d 507, 509, 512 (Tex. Crim. App. 2017) (self-defense instruction warranted where Gamino testified he retrieved and displayed gun even though he denied threatening men or pointing it at them).

The officers testified that Mitchell never mentioned a knife to them. Sergeant Bolton testified that he had only seen the type of wound Mitchell had—a cut to the webbing between the index finger and thumb—on the person doing the stabbing. The act of using or exhibiting the knife as a deadly weapon cannot be inferred from Mitchell's self-described conduct of engaging in a fistfight and nothing more than that, with his brother. Rather, in so

8

describing the altercation, Mitchell essentially denied the charged conduct of using a deadly weapon; so, without requesting lesser included offense instructions, he was not entitled to a justification defense. *Rodriguez*, 629 S.W.3d at 231. We therefore overrule Mitchell's complaints about the trial court's refusal to instruct the jury on self-defense.

### *Allowing the State to Amend the Indictment*

Mitchell argues that the indictment required the State to prove that he stabbed Bobby, but the State changed its theory following the close of evidence to no longer allege that Mitchell stabbed Bobby; instead, Mitchell carried a knife but collateral to his physical attack. Mitchell argues the State therefore deprived him of adequate notice, and gutted his defense, which had been based on defending against the allegation that he stabbed Bobby.

### *Applicable Law and Standard of Review*

The right to notice is set forth in both the United States and Texas Constitutions. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation"); Tex. Const. art. I, § 10 ("In all criminal prosecutions the accused shall have . . . . the right to demand the nature and cause of the accusation against him, and to have a copy thereof."). It is also set out in Texas statutes. *See* Tex. Code Crim. Proc. arts. 21.03, .04, .11 (setting out guidelines relating to sufficiency of indictment). "Thus, the charging instrument must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense." *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). Where the indictment facially alleges a complete offense, the State is bound by the theories alleged in the indictment. *Castillo v. State*, 7 S.W.3d 253, 258 (Tex. App.—Austin 1999, pet. ref'd). Once the trial on the merits has begun,

Article 28.10 permits amendments only if the defendant does not object. If the defendant objects, the amendment is prohibited unless it merely abandons surplusage. Tex. Code Crim. Proc. art. 28.10(b), (c).

The jury charge must not enlarge the alleged offense to authorize the jury to convict the defendant on a basis or theory permitted by the jury charge but not alleged in the indictment. *Castillo*, 7 S.W.3d at 258. The sufficiency of an indictment is a question of law, subject to de novo review. *Moff*, 154 S.W.3d at 601.

*Application*

The State did not ask to amend the charging instrument during trial. We agree with the State that Mitchell seems to be referencing the alteration of the charge that resulted from this portion of the charge conference:

The Prosecutor: Your Honor, we would ask that on page 1, that with the offense of aggravated assault with a deadly weapon, because—instead of aggravated assault by causing bodily injury with a deadly weapon, it just would be aggravated assault with a deadly weapon.

The Court: What page?

The Prosecutor: Page 1, first paragraph. So just aggravated assault with a deadly weapon, to make it consistent.

This seems to be a reference to the header of the offense, as it is listed in the jury charge. The defense lodged its own requests regarding the charge, without objecting to the State's request.

Contrary to Mitchell's assertion, the State never abandoned its allegations made in the indictment that Mitchell had injured Bobby by stabbing him with a knife. The State, bound by the theories alleged in the indictment, stuck to those theories and never sought leave of the

10

trial court to amend the indictment. *Castillo*, 7 S.W.3d at 258; Tex. Code Crim. Proc art. 28.11. The application paragraphs of the jury charge for both counts included the allegation that Mitchell stabbed Bobby as one of the two possible manners and means for how Mitchell committed the offenses. The charges neither enlarged on the alleged offenses nor authorized the jury to convict Mitchell on a basis or theory permitted by the jury charge but not alleged in the indictment. *Castillo*, 7 S.W.3d at 258. The State pleaded its cases against Mitchell in the conjunctive—alleging he caused bodily injury by stabbing Bobby with a knife *and* by striking Bobby with his hand. But different manners and means of commission may be presented in a jury instruction in the disjunctive when the charging instrument, in a single count, alleged the different manner and means in the conjunctive. *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014). Such a charging instrument still puts a defendant on clear notice of what the State will attempt to prove at trial. *State v. Carter*, 810 S.W.2d 197, 199 (Tex. Crim. App. 1991), *overruled on other grounds by State v. Barbernell*, 257 S.W.3d 248 (Tex. Crim. App. 2008). Mitchell got the notice promised by the United States and Texas Constitutions. *Moff*, 154 S.W.3d at 601. We overrule Mitchell's complaint about allowing the State to "amend the indictment."

### *Admission of Corporal Johnson's Hearsay Testimony*

Mitchell argues that the trial court erred in admitting, over his hearsay objection, Corporal Johnson's testimony about what Bobby said when he came into the police station—that Mitchell had inflicted injuries on him with a knife.

11

Hearsay is a statement, other than one made by the declarant while testifying at the current trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). For hearsay to be admissible, it must fit into an exception provided by a statute or the Rules of Evidence. *Id.* R. 802. One such exception is for an excited utterance, a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. *Id.* R. 803(2). Such a statement is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness. *Id*. The basis for the excited utterance exception is psychological; for, if a person is in the instant grip of violent emotion, excitement or pain, he or she ordinarily loses the capacity for reflection necessary to the fabrication of a falsehood. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).

We review the admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule for an abuse of discretion. *Id.* We do so considering the record before the trial court at the time the ruling was made. *See id*. at 596; *Lozano v. State*, 706 S.W.3d 429, 440 (Tex. App.—Austin 2024, no pet.). An abuse of discretion occurs only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Zuliani*, 97 S.W.3d at 595.

*Application*

Here, the evidence at the time of the ruling showed that Bobby had entered the police station to report the assault. Corporal Johnson testified that when he saw Bobby in the lobby at the police station "he appeared traumatized" and "had injuries to his head and blood on his clothing. It looked like he had been in a fight." "He told us he walked there from his house"

12

at "811 South Henderson."  This was about all the testimony that was before the trial court at the time of its ruling.

Mitchell here points to the evidence that Bobby had calmed down before he walked to the station and that his walk to the station was a long one—evidence that suggests the statement was not an excited utterance after all.  But at the time of the trial court's ruling, the State had not yet offered Bobby's testimony that, after the assault, he washed his face, sat down on the couch to make some phone calls to his other siblings, calmed Mitchell down, and then walked a mile to the police station to make the statement.  *See Sandoval v. State*, 409 S.W.3d 259, 284 (Tex. App.—Austin 2013, no pet.) ("The primary factor rendering an excited utterance reliable is the spontaneous nature of the statement.").  And the State had not yet offered the body-cam footage that showed Bobby's interaction with the officers was not made "under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection."  *Zuliani*, 97 S.W.3d at 596.  But because we are obligated to judge the validity of the trial court's ruling on the record as it appeared at the time of the ruling and given Corporal Johnson's testimony that Bobby appeared traumatized, the trial court did not abuse its discretion in admitting the testimony under the excited utterance exception.  *Id.*; *Lozano,* 706 S.W.3d at 440; *see also Reyes v. State,* 48 S.W.3d 917, 920 (Tex. App.—Fort Worth 2001, no pet.) (victim statement admissible as excited utterance where officer believed victim upset because she had been hit in face by appellant and assault had recently occurred due to freshness of cuts). We overrule Mitchell's complaint about the admission of the hearsay testimony.

**CONCLUSION**

Having overruled Mitchell's four issues, we affirm the judgments of the trial court.

13

_____

Chari L. Kelly, Justice

Before Justices Triana, Kelly, and Crump

Affirmed

Filed:   October 30, 2025

Do Not Publish

14