David Paul FROST, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–99–00619–CR.

Court of Appeals of Texas,
Austin.

Aug. 10, 2000.

Keith S. Hampton, Austin, for appellant.

Thomas O. Cloudt, Asst. Dist. Atty., Llano, for State.

Before Justices JONES, YEAKEL and PATTERSON.

LEE YEAKEL, Justice.

A jury found appellant David Paul Frost guilty of two counts of aggravated robbery. *See* Tex. Penal Code Ann. § 29.03 (West 1994). Upon the jury's assessment of punishment, the district court sentenced appellant to twenty years' confinement for one count and ten years' confinement for the other, with the sentences to run concurrently. Appellant presents seven issues on appeal. We will reverse and remand.

## FACTUAL BACKGROUND

In the late afternoon of June 2, 1998, Deborah Hunt and her friend Joy Larson went to "the Slab" to go swimming. The Slab is a low-water crossing on the west side of the Llano River at Ranch Road 3404, near the town of Kingsland. At around twilight, Nathan Orman and David Wishert arrived at the Slab. Orman and Larson knew each other, and the four began talking.

After the group of four had been talking for awhile and it had turned dark, a group of seven teenage boys, including appellant, walked by.[1] Wishert recognized one boy in the group, Troy Folsom, and talked with him for a few minutes. Two more boys from the group of seven, Thomas Cardwell and Ronald Wesser, came up to Wishert and Folsom. At some point, the group of seven discussed their plans for Orman and Wishert. Testimony about the plans varied. Four members of the group of seven testified—one member testified that the group planned to beat up Wishert and Orman; another member testified that there was also talk of stealing Wishert's car and raping the girls; another testified that the group had no plans to harm the four but only wanted to drink alcohol with them;[2] yet another member testified they planned to rob Wishert and Orman. Several members of the group testified that they saw appellant get a shovel from a Bronco driven by Klayton Kilburn, one of the group of seven. Folsom left the Slab because he did not want any part in harming Wishert, whom he knew. Cardwell and Wesser left along with Folsom.

After Folsom, Cardwell, and Wesser departed, the two girls left in their vehicle to use the telephone[3] and purchase some cig-

---

1. Witnesses indicated that the entire group of people, including the original four, were in their late teens or early twenties. Everyone in the group of seven boys was under the age of 17 except for appellant, who was 17.

2. Hunt, Larson, Orman, and Wishert had not consumed any alcohol during this event, but the group of seven had been drinking.

3. Hunt had a cellular phone but used it only for emergencies.

arettes at a nearby service station. They were gone for about five to fifteen minutes.

When the girls left, Wishert and Orman were sitting in the front seat of Orman's car, a T-top Mustang with the top open. The remaining four of the seven boys—appellant, Kilburn, Chad Wiggins, and Tyrone Leach—approached the Mustang. Orman was tuning his radio when he was hit over the head with a shovel. Orman did not see who hit him. Wishert and others, however, identified appellant as the one who hit Orman with the shovel. The group of four knocked the windows out of the Mustang, slashed the tires, and stomped the car's hood. Appellant hit Orman in the head with the shovel a second time. Wishert, meanwhile, was being attacked with either a rock or stick. Wishert pushed back on the seat, the seat broke, and he fell into the back seat. Wishert was then beaten in the back with a shovel. Wishert testified that while he did not see who hit him with the shovel, he did see appellant with the shovel both immediately before and after he was beaten. Both victims testified that during the attack, someone from the group asked for their wallets,[4] and both gave their wallets to the attackers. The attackers then yelled at the victims to get out of the car, opened the car door, and pulled Orman out. At about this time, the girls came back from the store. Orman saw the headlights and ran toward the on-coming vehicle. Wishert saw Orman get out of the car and start running. Appellant and two others began chasing Orman. Wishert got out of the car and started to follow Orman to help his friend, but the fourth boy stepped in front of him. Wishert hit this fourth boy and then ran in the opposite direction from Orman to get help.

The vehicle, however, did not stop for Orman. Hunt, who was driving, testified that she did not stop because she and Larson did not recognize Orman, who was "covered with something," later determined to be blood. The three boys, including appellant, were still chasing Orman and pushing him off the road. Hunt circled back, and again Orman ran out in front of her, but again she did not recognize him. Hunt and Larson drove up the road to call 911 on Hunt's cellular phone. It was then that Larson realized that the person who had run out in front of them was Orman. They went back to find him. They found Orman in the road, covered with blood. Orman said he had just been attacked with a shovel and that Wishert was missing. (Orman did not see Wishert run away from the scene of the attack.) By this time, the four attackers had fled in Kilburn's Bronco. About five or ten minutes later, the police arrived.

Officers Bill Boyd and Ted Christopher of the Llano County Sheriff's Department arrived on the scene shortly after midnight. Hunt, Larson, and Orman were at the scene. Orman's head and upper torso were covered in blood, and he was talking to Larson, saying that he had been hit with a shovel and that Wishert was missing. Boyd observed that the Mustang's glass had been knocked out; two tires had been slashed; there was blood on the driver's side and rocks scattered throughout the vehicle. EMS arrived about twenty minutes after the police and began tending Orman. Eventually, Wishert was located not far from the scene. Wishert had run to a family friend's house where he also had called the police. Both Wishert and Orman were taken to the hospital.

Orman was the more severely injured of the two and suffered three deep scalp lacerations and multiple abrasions and contusions. One of these lacerations penetrated the galea, the covering over the skull itself. Orman required 24 staples and two stitches to repair the injuries to his head. Orman also received a CAT scan to determine whether he had suffered a skull fracture or brain injury. At trial, about one year after the attack, Orman had a scar from his head injuries. Wishert was treat-

**4.** Kilburn testified that the victims offered their wallets to the assailants.

ed for a hematoma on his head and multiple abrasions and contusions. The police recovered the shovel at the scene, and DNA tests revealed Orman's blood on the shovel. Witnesses testified that the shovel was used in a manner capable of causing death or serious bodily injury. Appellant did not testify during the guilt/innocence stage of his trial.

The jury found appellant guilty of aggravated robbery of both Orman and Wishert. *See* Tex. Penal Code Ann. § 29.03. Upon the jury's assessment of punishment, the district court sentenced appellant to twenty years' imprisonment for the aggravated robbery of Orman and ten years for the aggravated robbery of Wishert with the sentences to run concurrently. In seven issues, appellant complains of his conviction on both counts and his punishment.

## DISCUSSION

The penal code provides that a person commits robbery if

in the course of committing theft ... and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

*Id.* § 29.02 (West 1994). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (West 1994).

■ A person commits aggravated robbery if he commits robbery and he:

(1) causes serious bodily injury to another;

(2) uses or exhibits a deadly weapon; or

(3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is:

(A) 65 years of age or older; or

(B) a disabled person.

*Id.* § 29.03. As Wishert and Orman are under 65 and not disabled, the only two possible aggravating elements are that appellant either caused serious bodily injury or used or exhibited a deadly weapon in the commission of the offense. A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B) (West 1994). Serious bodily injury is injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46) (West 1994).

Count one of the indictment against appellant charges that on or about June 2, 1998, appellant did:

PARAGRAPH A

... while in the course of committing theft and with the intent to obtain and maintain control of property, to-wit: a wallet, intentionally and knowingly *threaten and place* **NATHAN ORMAN** in fear of imminent bodily injury and death by using and exhibiting a *deadly weapon,* to-wit: **A SHOVEL,** that in the manner of its use and intended use was capable of causing death and serious bodily injury,

PARAGRAPH B

... while in the course of committing theft and with the intent to obtain and maintain control of property, to-wit: a wallet, intentionally, knowingly, and recklessly *cause bodily injury* to **NATHAN ORMAN** by **striking the head of Nathan Orman with a shovel,** and the Defendant did then and there use and exhibit a *deadly weapon,* to-wit: **A SHOVEL,** that in the manner of its use and intended use was capable of causing death and serious bodily injury....

(Italics added.) Count two of the indictment reads the same as count one except that the named victim is David Wishert and in Paragraph B, the grand jury alleges that appellant struck the torso of Wishert

as opposed to the head. The indictment thus charges appellant under both theories of robbery—causing bodily injury and threatening another—but only alleges one aggravating element—using or exhibiting a deadly weapon.

■■■ The jury was charged as follows: [5]

> now, if you find ... [appellant] ... while in the course of committing theft of property, and with intent to obtain and maintain control of said property, did either (a) intentionally or knowingly cause serious bodily injury to [Orman and Wishert] by hitting [them] with a shovel, or (b) intentionally or knowingly threaten or place [Orman and Wishert] in fear of imminent bodily injury or death, then you will find [appellant] guilty.

The jury was given the option of finding appellant guilty or not guilty of only aggravated robbery. In his third issue, appellant argues that the charge is defective because it instructed the jury to return a verdict for aggravated robbery if it found that the State proved only the elements of robbery. The charge allows the jury to find appellant guilty of *aggravated* robbery if it finds that he intentionally or knowingly threatened or placed the victims in fear of imminent bodily injury or death. Threatening conduct is an element of robbery but is not an aggravating element. *See* Tex. Penal Code Ann. §§ 29.02, .03. When a charge authorizes a conviction for conduct that is not an offense as well as for conduct that is an offense, the trial court commits error. *See Cumbie v. State,* 578 S.W.2d 732, 733–35 (Tex.Crim.App. 1979); [6] *Castillo v. State,* 7 S.W.3d 253, 258–59 (Tex.App.—Austin 1999, pet. ref'd). No objection was made to the charge at

trial. The State concedes error but argues that under *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984) (op. on reh'g), appellant has not shown egregious harm.

■■■ Before conducting a harm analysis, however, we observe that the court's charge contains additional error, albeit unassigned. *See Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990); *Carter v. State,* 656 S.W.2d 468, 468–70 (Tex.Crim.App.1983); *Rodriguez v. State,* 939 S.W.2d 211, 219 (Tex.App.—Austin 1997, no pet.) (court of appeals may, in its discretion, address errors not briefed). The indictment charges that the aggravating factor was the *use or exhibition of a deadly weapon.* The jury charge makes no mention of this aggravating factor and instead substitutes the aggravating factor of *causing serious bodily injury,* which was not charged by the indictment. We hold this to be error. *See Daniels v. State,* 754 S.W.2d 214, 223 (Tex.Crim.App.1988) (reversible error when indictment charged that appellant delivered marihuana by *constructive transfer* and jury was charged with only *actual delivery*); *Cumbie,* 578 S.W.2d at 733–35 (error when charge authorizes conviction on theory not alleged in indictment). The court's charge allowed the jury to convict appellant of aggravated robbery if the jury found either that (1) appellant engaged in conduct that is not alleged in the indictment—*causing serious bodily injury*—or (2) appellant engaged in conduct that is not aggravated robbery—*threatening or placing the victims in fear.*

■■■ Having determined that the district court erred in his charge to the jury, we must now determine if sufficient harm was caused by the error to require a reversal, despite the lack of an objection. *See Hutch v. State,* 922 S.W.2d 166, 170 (Tex.

---

5. The jury was charged in two separate counts, one for Orman and one for Wishert. The jury was also charged on the law of parties, which is not at issue in this appeal.

6. *Cumbie* has been overruled to the extent it held that "fundamental" charge error required automatic reversal. *See Almanza v.*

*State,* 686 S.W.2d 157, 174 (Tex.Crim.App. 1984) (op. on reh'g). The *Cumbie* categories of charge error, however, remain intact although not every error will require reversal under *Almanza. See Castillo v. State,* 7 S.W.3d 253, 258–59 (Tex.App.—Austin 1999, pet. ref'd).

Crim.App.1996). A jury-charge error must be reviewed for harm according to the standards set out in *Almanza*. *See* 686 S.W.2d at 171. Under *Almanza*, if no proper objection is made at trial, appellant must claim "fundamental" error and will obtain a reversal only if the error creates such harm that appellant has been deprived of "a fair and impartial trial—in short, 'egregious harm.'" *Almanza*, 686 S.W.2d at 171. The actual degree of harm must be assayed in light of the entire jury charge; the state of the evidence, including the contested issues and weight of probative evidence; the argument of counsel; and any other relevant information revealed by the record of the trial as a whole. *See id.*

At the beginning of the trial, the indictment, which charged aggravated robbery by use or exhibition of a deadly weapon, was read to the jury. In its opening statement, the State said that it would present evidence that appellant used the shovel as a deadly weapon, *i.e.*, used it in a manner capable of causing death or serious bodily injury. The State focused on the injuries that the victims actually suffered to bolster its argument that the shovel was a deadly weapon. Appellant's opening statement was a general denial of the offense. During the course of the trial, the jury heard from several witnesses, including police and medical personnel, that the shovel was used in a manner capable of causing death or serious bodily injury.[7] The jury also heard evidence about the victims' injuries. Near the close of evidence, the court offered the proposed charge to the parties, and appellant objected to it on the grounds that the charge should contain several lesser included offenses.[8] The charge was

read to the jury. In its closing argument, the State argued that the shovel had been used as a deadly weapon and that the victims suffered serious bodily injury. Appellant, in addition to advancing other defenses, argued that the victims had not suffered serious bodily injury; appellant did not argue that the shovel had not been used as a deadly weapon.

The seriousness of the victims' injuries was a contested issue throughout the trial. Whether the victims suffered serious bodily injury as defined in the penal code is contested. The injuries to Wishert, which consisted only of bruises and cuts, are especially questionable.[9] It is entirely plausible that, faced with the erroneous charge, the jury could not agree on whether appellant caused serious bodily injury to the victims but could have easily concluded that appellant threatened the victims or placed them in fear. The jury was not charged to consider whether appellant used the shovel as a deadly weapon. Although the evidence is sufficient to support a jury finding of use of a deadly weapon, we refuse to so find as a matter of law. We are also troubled because in its closing argument, the State argued that in Wishert's case there was no question that he was at least threatened with the shovel, thus in essence arguing to the jury that because an element of robbery was satisfied, appellant should be convicted of *aggravated* robbery. The jury was never given the option of convicting appellant of aggravated robbery as alleged in the indictment. The indicted crime was not submitted to the jury as a possible option under which to convict.

---

**7.** This evidence was adduced from testimony generally consisting of a question—is a shovel, when used as a club, an object capable of causing death or serious bodily injury?—coupled with an affirmative response.

**8.** The district court overruled this objection.

**9.** Neither the doctors nor the victims ever testified, either directly or indirectly, that the

victims' injuries created a substantial risk of death or caused death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. We do not hold that the evidence of serious bodily injury is factually or legally insufficient but merely point out that the evidence is not conclusive.

■ The State, without citing authority, argues that appellant was not egregiously harmed by the charge error. The State points out that the charge "correctly sets forth Aggravated Robbery with a Deadly Weapon in describing the offense alleged in the indictment." The State is correct to the extent that the charge correctly defines robbery and aggravated robbery. But the application paragraphs of the charge [10] are clearly in error, and the portion of the charge that applies the law to the facts of the case determines if the charge is fundamentally defective. *See Hudson v. State*, 675 S.W.2d 507, 512 (Tex. Crim.App.1984); *Bui v. State*, 964 S.W.2d 335, 347 (Tex.App.—Texarkana 1998, pet. ref'd).

■ The State also argues that there was "substantial" and "uncontroverted" evidence that appellant used a deadly weapon in the offense, as alleged in the indictment. However, "[a] charge authorizing conviction on a theory not alleged in the indictment is not necessarily free from egregious error, even though the evidence is sufficient to support the allegations of the indictment." *Lang v. State*, 698 S.W.2d 223, 225 (Tex.App.—Dallas 1985, no pet.). We further note that this case is unlike those cases in which the jury is presented with two theories, only one of which is alleged in the indictment, and the

appellate court determines that there is no egregious harm because there is overwhelming evidence of the correctly submitted theory.[11] In this case, there is no correctly submitted theory; the jury was given two wrong choices.

We hold that under the facts of this case, appellant was egregiously harmed by the erroneous jury charge. *Cf. Daniels*, 754 S.W.2d at 223 (egregious harm when indictment charged that appellant delivered marihuana by *constructive transfer* and jury was charged with only *actual delivery* ); *Steward v. State*, 830 S.W.2d 771, 774 (Tex.App.—Houston [14th Dist.] 1992, no pet.) (egregious harm when indictment charged burglary, jury was charged with both burglary and improper lesser included offense of theft, and jury convicted on theft). *Ross v. State*, although pre-*Almanza*, was quoted with approval in *Almanza* and held that when a jury charge authorized a conviction under only one theory, which was not charged in the indictment, there was "fundamental" error that was "calculated to injure the rights of the appellant to the extent that he has not had a fair and impartial trial." 487 S.W.2d 744, 745 (Tex.Crim.App.1972). Appellant's third issue is sustained.

■ In his first and second issues, appellant argues that we should render a judgment of acquittal because the evidence

---

10. *See supra* p. 399.

11. In *Castillo v. State*, the indictment alleged aggravated robbery by threat and use of a deadly weapon. *See* 944 S.W.2d 440, 441 (Tex.App.—Houston [14th Dist.] 1997, no pet.). The jury was charged with aggravated robbery, robbery by threat (a proper lesser included offense), and robbery by causing bodily injury (an erroneous submission). *See id.* at 441–42. The jury found the defendant guilty of robbery. *See id.* at 441. The court held there was no egregious harm because the evidence was sufficient to convict on robbery by threat, a properly submitted theory. *See id.* at 443–44.

In *Fowler v. State*, the indictment alleged aggravating kidnaping, with the two aggravating factors listed as terrorizing the victim and using the victim as a hostage. *See* 958

S.W.2d 853, 857 (Tex.App.—Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex.Crim.App.1999). The charge included a third, uncharged aggravating factor (using a deadly weapon), but the court concluded there was no egregious harm because there was "overwhelming" evidence of the two properly submitted aggravating factors. *See id.* at 858–59.

In *Mattox v. State*, the indictment alleged aggravated assault by *causing* bodily injury (with a deadly weapon as the aggravating factor). *See* 874 S.W.2d 929, 934 (Tex.App.—Houston [1st Dist.] 1994, no pet.). The jury was charged with both theories of assault—*causing* bodily injury or *threatening* bodily injury (in addition to the correct aggravating element). *See id.* at 934–35. The court found no egregious harm because there was "uncontradicted" evidence that the victim sustained bodily injury. *See id.* at 935.

is legally insufficient to support the jury's finding that the victims suffered serious bodily injury. To determine the legal sufficiency of the evidence to support a criminal conviction, the question is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *McCain v. State,* 14 S.W.3d 300, 307 (Tex.Crim.App.2000). The State and appellant join issue over whether the Court should evaluate the sufficiency of the evidence under the jury charge actually given or a hypothetically correct jury charge. *See Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App.1997). We do not decide this issue, however, because we hold that the evidence is sufficient under either charge. There is clearly sufficient evidence, under a hypothetically correct jury charge, that appellant used the shovel as a deadly weapon. And under the charge actually given to the jury, there is sufficient evidence that appellant threatened or placed the victims in fear of imminent bodily injury or death. We overrule appellant's first and second issues.

In his remaining four issues, appellant asserts error in the district court's refusing to instruct the jury on a lesser included offense; failing to inform the jury, at the punishment phase, of appellant's parole eligibility; and excluding evidence of the punishment received by the other boys involved in the assault. Appellant also urges ineffectiveness of his trial counsel. Because resolution of these issues is not necessary to the outcome of this appeal, we do not reach them. *See* Tex.R.App. P. 47.1.

## CONCLUSION

Because we hold that the harm to appellant by virtue of the errors in the district court's jury charge was egregious, we reverse the judgment and remand this cause to the district court.