

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00195-CR

BRANDON DURGIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1839630

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

A Tarrant County jury convicted Brandon Durgin of burglary of a habitation, a second-degree felony offense, and assessed his sentence to fifty years' imprisonment.[1]  *See* TEX. PENAL CODE ANN. § 30.02(c)(2) (Supp.).  In this appeal, Durgin argues that "[t]he jury charge did not conform to the allegations in the indictment, and, therefore, authorized an illegal conviction" because "the jury charge instructed the jury to convict . . . Durgin of Burglary of a Habitation if it found, beyond a reasonable doubt, the elements of Aggravated Assault with a Deadly Weapon."[2] In the guilt-innocence jury charge, the first paragraph of count two tracked the language in the indictment.  However, the second paragraph of count two tracked the language in count three of the indictment.  We find that the jury charge error caused egregious harm.  As a result, we reverse the trial court's judgment and remand to the trial court for further proceedings on count two not inconsistent with this opinion.

## I.  Background

On March 2, 2024, Juma Salih "hear[d] a window shatter in [his]" backyard."  Salih went downstairs and turned the lights on to see Durgin through a glass window with a machete. Durgin was standing inside the "extra room with a kitchen in it" but behind a locked door.  Salih testified that Durgin said, "Open the door.  I'm going to kill you.  Open the door" and cursing at Salih.  When Salih's wife started to call 9-1-1, Salih testified that Durgin said, "No police, no

---

[1]This appeal was transferred to this Court from the Second Court of Appeals pursuant to a Texas Supreme Court docket equalization order.  *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.).  Accordingly, we apply the precedent of the Second Court of Appeals in deciding this case to the extent that it conflicts with our own.  *See* TEX. R. APP. P. 41.3.

[2]The jury acquitted Durgin on count one (first-degree felony offense of burglary of a habitation) and count three (aggravated assault with a deadly weapon).

police," and ran away. When police found Durgin a few minutes later, he did not have a machete, and a machete was never found.

Melissa Hines, Salih's neighbor, testified that a man entered her house the day before Salih's home invasion. Hines said the intruder demanded her car keys because the police were looking for him. Hines testified that the intruder grabbed her, she pushed him off of her, and the intruder fled. Hines stated that she did not see anyone in the courtroom that was the intruder that broke into her home. Hines did identify the intruder on her security-camera recording and said that the intruder had bleached-blond hair and tattoos on his neck. However, Hines noted that Durgin had the same eyes and tattoos as the intruder on her security-camera recording, but his hair was different.

## II.     The Jury Charge Contained Error

In his second point of error, Durgin argues that "the jury charge instructed the jury to convict . . . Durgin of Burglary of a Habitation if it found, beyond a reasonable doubt, the elements of Aggravated Assault with a Deadly Weapon," and "[t]he jury charge did not conform to the allegations in the indictment, and, therefore, authorized an illegal conviction." The State admits error. We agree.

### A.     Applicable Law

"Appellate courts review a claim of charge error through a two-step process: first determining whether error exists and then conducting a harm analysis if error is found to exist." *Rogers v. State*, 677 S.W.3d 705, 712 (Tex. Crim. App. 2023) (per curiam).

3

"Both Texas and federal courts have held that the jury must be unanimous in finding that the defendant committed a specific statutory crime." *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008). "[E]ven though the State was entitled to submit all of the allegations included in the indictment to the jury, the State was not entitled to mix what were really separate offenses into a single general-verdict submission, because that would violate the defendant's constitutional right to a unanimous verdict." *Martinez v. State*, 225 S.W.3d 550, 555 (Tex. Crim. App. 2007).

**B.    Did Error Occur?**

In September 2024, the grand jury returned an indictment on three counts.[3]   Count two included two paragraphs as alternative manner and means of burglary of a habitation.  The State alleged in the first paragraph of count two that Durgin:

> ON OR ABOUT THE 2ND DAY OF MARCH 2024, DID INTENTIONALLY OR KNOWINGLY, WITHOUT THE EFFECTIVE CONSENT OF JUMA SALIH, THE OWNER THEREOF, ENTER A HABITATION OR A PART THEREOF AND DID COMMIT OR ATTEMPT TO COMMIT ASSAULT OR THEFT[.]

The State alleged in the second paragraph of count two that Durgin:

> ON OR ABOUT THE 2ND DAY OF MARCH 2024, DID INTENTIONALLY OR KNOWINGLY, WITHOUT THE EFFECTIVE CONSENT OF JUMA SALIH, THE OWNER THEREOF, ENTER A HABITATION OR A PART THEREOF WITH THE INTENT TO COMMIT ASSAULT OR THEFT[.]

Prior to opening statements, Durgin pled not guilty to all three counts after the State read the indictment.

---

[3]The indictment contains an enhancement for a prior felony offense of a felon in possession of a firearm.

4

At the charge conference, Durgin noted that there was a discussion in chambers about putting a "stop paragraph after count one" in the jury charge[4]—"If you find the defendant guilty of count one, you will not consider counts two or three. If you find the defendant not guilty of count one, you will next proceed to consider count two of the indictment." After the State agreed, the trial court included the stop paragraph in the jury charge.

The jury charge for count one includes the following language:

Now, if you find . . . that Brandon Durgin, on or about the 2nd day of March 2024, in the County of Tarrant, State of Texas, did intentionally or knowingly, without the effective consent of Juma Salih, the owner thereof, enter a habitation and did commit or attempt to commit aggravated assault with a deadly weapon, then you will find the defendant guilty of burglary of a habitation and did commit or attempt to commit aggravated assault as charged in count one of the indictment.

The jury charge for count two includes the following language:

Now, if you find . . . that Brandon Durgin, in the County of Tarrant, State of Texas, on or about the 2nd day of March 2024, did intentionally or knowingly, without the effective consent of Juma Salih, the owner thereof, enter a habitation or a part thereof and did commit or attempt to commit assault or theft, then you will find the defendant guilty of burglary of a habitation as charged in count two, paragraph one of the indictment; or

Now, if you find . . . that Brandon Durgin, in the County of Tarrant, State of Texas, on or about the 2nd day of March 2024, did intentionally or knowingly threaten imminent bodily injury to Juma Salih, and the defendant did use or exhibit a deadly weapon during the commission of the assault, namely, a machete, or a knife, or a sharp object, then you will find the defendant guilty of burglary of a habitation as charged in count two, paragraph two of the indictment.

. . . .

In either event, you will next proceed to consider count three of the indictment.

---

[4]Counts one and three in the jury charge track the language in the indictment. Count one was burglary of a habitation and did commit aggravated assault. Count three was aggravated assault with a deadly weapon.

The jury charge for count three includes the following language:

Now, if you find . . . that Brandon Durgin, in the County of Tarrant, State of Texas, on or about the 2nd day of March 2024, did intentionally or knowingly threaten imminent bodily injury to Juma Salih, , [sic] and the defendant did use or exhibit a deadly weapon during the commission of the assault, namely, a machete, or a knife, or a sharp object, then you will find the defendant guilty of aggravated assault with a deadly weapon as charged in count three of the indictment.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, then you will acquit the defendant of aggravated assault with a deadly weapon as charged in count three of the indictment and say by your verdict "not guilty."

The trial court read the jury charge to the jury. Durgin did not object even though the second paragraph of count two in the jury charge did not track the language of the indictment. Instead, the second paragraph of count two in the jury charge tracked count three of the indictment, effectively duplicating count three, and, in so doing, omitted the second paragraph of count two of the indictment from the jury charge.

The State concedes the second paragraph of count two in the jury charge was erroneous because the language from count three was included in the second paragraph of count two. *See Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012) ("As a general rule, the instructions must also conform to allegations in the indictment.").

The jury charge also does not require a unanimous verdict in count two. "Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed. This means that the jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'" *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011) (footnote omitted) (citations omitted) (quoting *Stuhler v. State*, 218 S.W.3d

6

706, 717 (Tex. Crim. App. 2007)); *see* TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (Supp.) ("Not less than twelve jurors can render and return a verdict in a felony case. It must be concurred in by each juror and signed by the foreman."); *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005) ("Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases.").

Here, neither party argues that the second paragraph of count two of the jury charge tracked the indictment or that the two offenses in count two are not separate offenses. *See Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000) (holding the jury charge "allowed a conviction on less than an unanimous jury verdict" when two separate offenses were submitted to the jury in the disjunctive). Although both paragraphs for count two in the jury charge allowed the jury to determine that an assault occurred, burglary of a habitation and aggravated assault are separate offenses that have mutually exclusive elements as charged (i.e., burglary of a habitation requires entry and theft, and aggravated assault has the deadly weapon element). The jury was allowed to decide between two separate offenses and returned a general verdict for count two. *See Ngo*, 175 S.W.3d at 744 ("When the State charges different criminal acts, regardless of whether those acts constitute violations of the same or different statutory provisions, the jury must be instructed that it cannot return a guilty verdict unless it unanimously agrees upon the commission of any one of these criminal acts." (citing *Francis*, 36 S.W.3d at 125)).

7

Therefore, count two of the application section of the jury charge was erroneous. We proceed to an *Almanza*[5] analysis. *Trejo v. State*, 313 S.W.3d 870, 874 (Tex. App.—Houston [14th Dist.] 2010, *pet. ref'd*) (op. on remand).

### III. The Jury Charge Error Caused Egregious Harm

Durgin argues the jury charge error caused egregious harm. We agree.

#### A. Applicable Law

Because Durgin did not object to any issues in count two, "we apply the 'egregious harm' standard wherein reversal is required only if the charge error was 'so egregious and created such harm that the defendant has not had a fair and impartial trial.'" *Gomez v. State*, 459 S.W.3d 651, 660 (Tex. App.—Tyler 2015, pet. ref'd) (quoting *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009), *overruled on other grounds by Sandoval v. State*, 665 S.W.3d 496, 537 (Tex. Crim. App. 2022)); *see* TEX. CODE CRIM. PROC. ANN. art. 36.19. "Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Gomez*, 459 S.W.3d at 661 (citing *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011)). Harm is assessed by "review[ing] the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Id.* (citing *Taylor*, 332 S.W.3d at 489). "This is a difficult standard to meet and requires the record disclose actual rather than theoretical harm." *Hareter v. State*, 435 S.W.3d 356, 361

---

[5] *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985).

8

(Tex. App.—Amarillo 2014, no pet.). "[S]uch a determination must be done on a case-by-case basis." *Gomez*, 459 S.W.3d at 661. "Neither the State nor the defendant has a burden to prove harm." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). We must measure harm "at least in part, against the likelihood that the jury's verdict was actually based upon an alternative available theory of culpability not affected by erroneous portions of the charge." *Sanchez*, 376 S.W.3d at 775 (quoting *Atkinson v. State*, 923 S.W.2d 21, 27 (Tex. Crim. App. 1996), *overruled on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002)).

**B.     First *Almanza* Factor-Entire Jury Charge**

The first *Almanza* factor is reviewing the entire jury charge. *See Almanza*, 686 S.W.2d at 171 (op. on reh'g), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988). A review of the entire charge weighs in favor of finding egregious harm. The error is located in the application section. "[T]he portion of the charge that applies the law to the facts of the case determines if the charge is fundamentally defective." *Frost v. State*, 25 S.W.3d 395, 401 (Tex. App.—Austin 2000, no pet.). "[A] charge authorizing conviction on a theory not alleged in the indictment is not necessarily free from egregious error, even though the evidence is sufficient to support the allegations of the indictment." *Lang v. State*, 698 S.W.2d 223, 225 (Tex. App.—Dallas 1985, no pet.).

**1.     Nothing Suggests the Jury Was Unanimous**

Since the jury returned a general verdict on count two and lacked a specific unanimity instruction, we cannot determine which paragraph each juror based his or her decision on. "Texas law requires that a jury reach a unanimous verdict about the specific crime that the

defendant committed." *Cosio*, 353 S.W.3d at 771. "Because it submitted only a general unanimity instruction, '[t]he jury may have believed that it had to be unanimous about the offenses, not the criminal conduct constituting the offenses.'" *Tiller v. State*, 578 S.W.3d 143, 148 (Tex. App.—Texarkana 2019, no pet.) (alteration in original) (quoting *Cosio*, 353 S.W.3d at 774). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application." *Id.* (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)). "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id.* (quoting *Delgado*, 235 S.W.3d at 249).

The jury charge "permitted non-unanimous verdicts based on the evidence presented in the case," and the "only mention of the word 'unanimous' . . . was . . . boilerplate language." *Arrington v. State*, 451 S.W.3d 834, 841 (Tex. Crim. App. 2015) (quoting *Arrington v. State*, 413 S.W.3d 106, 112 (Tex. App.—San Antonio 2013), *rev'd on other grounds*, 451 S.W.3d 834 (Tex. Crim. App. 2015)). The jury charge contains a general instruction that states,

> You are instructed that your verdict must be by a unanimous vote of all members of the jury. In deliberating on this case, you shall consider the charge as a whole and you must not refer to or discuss any matters not in evidence before you.

This does not inform the jury that they must be unanimous on each paragraph. *See Gomez v. State*, 498 S.W.3d 691, 699 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("[G]eneric language regarding unanimity in the overall verdict is insufficient to ensure a unanimous verdict on a

10

single incident" when the State presents evidence of multiple incidents of the same offense at trial.); *Stuhler*, 218 S.W.3d at 719–20 ("In no other part of the jury charge or the arguments of counsel was the jury ever informed that it must unanimously agree on one result or the other, or both."); TEX. CODE CRIM. PROC. ANN. art. 36.13 ("[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby.").

The Texas Court of Criminal Appeals has broadly reviewed harm in jury unanimity issues to determine whether the jury was actually unanimous solely on the proper aspects of the application section. In doing so, the Court of Criminal Appeals has reviewed the unanimity issue with several different analytical methodologies. In *Gonzalez v. State*, the lesser included offense (reckless) was erroneously incorporated within the main charge. *Gonzalez v. State*, 610 S.W.3d 22, 29 (Tex. Crim. App. 2020). For any mental state in the main charge, the jury must have at least relied upon a reckless mental state. *Id.*

> [B]ecause proof of a greater culpable mental state necessarily constitutes proof of the lesser culpable mental state, the jury's guilty verdict indicates that it was at *least* unanimous about Appellant's recklessness and could have convicted him on that basis regardless of whether it was split on the intentional/knowing culpable mental states.

*Id.* This was a logical inference that applied equally to each offense.

In *French v. State*, the Court of Criminal Appeals concluded that "the risk that a rational juror would have convicted Appellant on the basis that he contacted and/or penetrated [the victim]'s sexual organ with his own—and not also on the basis that he contacted and/or penetrated her anus—is not 'remotely significant,'" *French v. State*, 563 S.W.3d 228, 237–38 (Tex. Crim. App. 2018) (quoting *Dixon v. State*, 201 S.W.3d 731, 736 (Tex. Crim. App. 2006),

11

"and is, in fact, so 'highly unlikely' as to be 'almost infinitesimal,'" *id.* at 238 (quoting *Owings v. State*, 541 S.W.3d 144, 152, 153 (Tex. Crim. App. 2017) (footnote omitted) (citation omitted).

In *Dixon*, the Court of Criminal Appeals held that "[w]e likewise perceive no risk that the present case led to a non-unanimous verdict" because the victim testified to "[t]he nighttime scenario being typical (ninety-nine out of one hundred), it is obvious from this record that anyone who believed the complainant's allegations in any respect would believe that sexual assaults occurred at night." *Dixon*, 201 S.W.3d at 735.

In *Cosio*, the Court of Criminal Appeals determined the defendant was not denied a fair and impartial trial because "[i]t is thus highly likely that the jury's verdicts . . . were, in fact, unanimous." *Cosio*, 353 S.W.3d at 778. The victim testified to four separate acts. *Id.* at 777. While not impeaching the victim, the defendant provided a general defense "that he did not commit any of the offenses and that there was reasonable doubt as to each of the four incidents because [the victim] was not credible and the practical circumstances surrounding the incidents of criminal conduct did not corroborate [the victim]'s testimony." *Id.* The defendant's defense "was essentially of the same character and strength across the board." *Id.* "The jury was not persuaded that he did not commit the offenses or that there was any reasonable doubt." *Id.* "Had the jury believed otherwise, they would have acquitted Cosio on all counts." *Id.* at 777–78. "On this record, therefore, it is logical to suppose that the jury unanimously agreed that Cosio committed all of the separate instances of criminal conduct during each of the four incidents." *Id.* at 778.

Here, as discussed below, the relevant evidence was contested, and we can only speculate as to which paragraph each juror relied on, since the jury returned a general verdict that did not specify which paragraph it relied upon. We cannot accept the State's argument that the jury acquitted Durgin on all offenses involving aggravated assault (count one, count three, and the second paragraph of count two) and therefore the jury must have unanimously convicted Durgin solely on the first paragraph of count two. That would be mere speculation. *See Hisey v. State*, 129 S.W.3d 649, 654 (Tex. App.—Houston [1st Dist.] 2004), *pet. dism'd*, 161 S.W.3d 502 (Tex. Crim. App. 2005) (per curiam) ("Nothing in the record suggests that the jury did not understand or follow the court's charge, and we must presume that it is possible that appellant was convicted by a jury that may have been split concerning whether he killed either [victim]."). The risk here is not infinitesimally small that the jury only convicted Durgin based solely on the first paragraph.[6]

### 2. No Other Part of the Jury Charge Ameliorated the Issue

"Since the jury charge itself did not require the jury to agree on one result or the other, the jury could readily have convicted the appellant without even substantively debating which of the two types of injury she caused." *Stuhler*, 218 S.W.3d at 719. The verdict form and application section use the following language to refer to count one as "burglary of a habitation and did commit or attempt to commit aggravated assault" and count two was only referenced as "burglary of a habitation." At the end of count two in the application section, the jury charge

---

[6]We also cannot speculate that the jury remembered the language of the second paragraph of count two from arraignment or voir dire and applied it in spite of language in the jury charge ordering the jury to solely look at the language of the jury charge.

reads "then you will find the defendant guilty of burglary of a habitation <u>as charged in count two,</u> <u>paragraph two of the indictment</u>." (Emphasis added). This language may point the jury to the abstract section for a definition of burglary of a habitation. The definition of burglary of a habitation did not adequately inform the jury of the appropriate decision. The jury charge defined burglary of a habitation as,

> [o]ur law provides that a person commits the offense of burglary of a habitation if, without the effective consent of the owner, he enters a habitation with intent to commit a felony, theft, or an assault; or enters a habitation and commits or attempts to commit a felony, theft, or an assault.

The definition was not narrowly tailored and does not specifically state the correct law. *See Griffin v. United States*, 502 U.S. 46, 59 (1991) ("Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law . . . . When . . . jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error."). The language in the abstract section combines both the elements of count one and both paragraphs of count two. Nothing suggests that the second paragraph should have been the burglary with intent to commit theft or assault type.

Here, the first *Almanza* factor heavily weighs in favor of finding egregious harm. *See Almanza*, 686 S.W.2d at 171.

C.      Second *Almanza* Factor-State of Evidence

The second *Almanza* factor is "the state of the evidence, including the contested issues and weight of probative evidence." *Id.*

14

The contested issues go to the heart of the difference between the first paragraph and the second paragraph. The evidence presented was not overwhelming for either paragraph.

Some of the jurors could have relied on the second paragraph because they believed Salih's wife when she told 9-1-1 there was a man with a machete inside her house.[7] Some of the jurors could have relied on the first paragraph because they believed Durgin: (1) upon arrest, stated that he was merely trying to get away from the police and not trying to hurt or steal from anyone; (2) did not have a machete since a machete was never recovered, even though law enforcement searched the only area where he could have disposed of it; and (3) entered Salih's residence to steal food because he was on the lam. Also, jurors could have believed that Durgin did not possess a machete because he did not have a deadly weapon when he entered and attempted to steal Hines's car keys. The State elicited testimony from Hines to substantiate the theft theory. Hines testified about Durgin trying to get her car keys, and she was not able to identify Durgin except that his eyes and the tattoos on his neck looked the same. The connection to Hines's home invasion is weak because Hines could not fully identify Durgin as the person who entered her home.

The second *Almanza* factor weighs in favor of egregious harm. *See id.*

### D.     Third *Almanza* Factor-Arguments of Counsel

The third *Almanza* factor is "the argument of counsel." *Id.* "The parties also did not ameliorate the error by explaining what was required for a unanimous verdict." *Tiller*, 578 S.W.3d at 149.

---

[7]Durgin does not contest that he was the person in Salih's house, that the "add-on" kitchen was part of the residence, or that he made the alleged threat.

Neither party explained during closing arguments with enough specificity that the second paragraph of the jury charge was burglary of a habitation with intent to commit assault or theft. Durgin argued that he did not have an intent to commit burglary of a habitation because he was merely hiding from the police. Durgin conceded that he entered Salih's residence. Durgin also attacked the sufficiency of the investigation by saying the police did not even search for the machete, even though the search area was small, and the police did not find a machete—even when they used a drone to search. Overall, Durgin argued that he was innocent of the burglary charges and that he did not have a machete, so he was not guilty of aggravated assault. The State focused on count one and urged the jury to convict Durgin on count one. The State explained that count two was "the back up form of burglary of a habitation" in case the jury wanted to convict Durgin because he only intended to get food or steal a car.

The third *Almanza* factor weighs in favor of finding egregious harm. *See Almanza*, 686 S.W.2d at 171.

### E.      Fourth *Almanza* Factor-Other Relevant Information

The final *Almanza* factor is "any other relevant information revealed by the record of the trial as a whole." *Id.* The jury was not provided a correct and detailed recitation of the omitted offense except at arraignment and voir dire.

The fourth *Almanza* factor weighs in favor of egregious harm. *See id.*

16

**F.      Conclusion**

Because the jury charge improperly allowed the jury to convict Durgin based on a non-unanimous decision and nothing else ameliorated this error, Durgin was egregiously harmed by the deprivation of his due-process right to a unanimous verdict and a fair and impartial trial.

Therefore, Durgin's second issue is sustained.

**IV.      Legally Sufficient Evidence Supports the Jury's Findings of Guilt**

We must also address the appropriate remedy.  Durgin argues that "[t]he erroneous jury charge in this case deprived Mr. Durgin of that fundamental right, and the only remedy is for this Court to reverse and remand for a new trial."  However, Durgin argues sufficiency of the evidence in count two where the remedy of acquittal provides greater relief.  Therefore, *Benavidez* requires us to review any other sufficiency error that was argued.  *Benavidez v. State*, 323 S.W.3d 179, 181 (Tex. Crim. App. 2010) ("[A]n appellate court does not properly order the entry of a judgment of acquittal unless either the trial court's ruling amounts to a *de facto* but unacknowledged acquittal, or the appellate court itself finds that the evidence was legally insufficient to support the conviction." (footnote omitted) (citations omitted)); *see Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) ("[T]he standard we formulate today ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted."); *Manrique v. State*, 994 S.W.2d 640, 642 (Tex. Crim. App. 1999) ("[T]he evidence is not to be held insufficient because of a defect in the court's charge.").

"To determine whether the evidence is legally sufficient, we compare the evidence produced at trial to 'the elements of the offense as defined by the hypothetically correct jury charge.'" *Gutierrez v. State*, 710 S.W.3d 804, 809 (Tex. Crim. App. 2025) (quoting *Malik*, 953 S.W.2d at 240). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

## A. Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

## B. No Sufficient Evidence of Assault

In his first point of error, Durgin argues that the evidence was insufficient for count two. The sufficiency analysis is limited to the hypothetically proper jury charge, which only includes,

[n]ow, if you find . . . did intentionally or knowingly, without the effective consent of Juma Salih, the owner thereof, enter a habitation or a part thereof and did commit or attempt to commit assault or theft, then you will find the defendant guilty of burglary of a habitation as charged in count two,' paragraph one of the indictment.

Durgin argues that assault by threat as the underlying offense for the first paragraph requires a threat and an additional threatening act. Durgin relies on the civil opinion in *Jones v. Shipley*, 508 S.W.3d 766, 769 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) for that proposition. However, the plain language of Section 22.01(a)(2) of the Texas Penal Code does not require any additional act. *See* TEX. PENAL CODE. ANN. § 22.01; *see generally Tidwell v. State*, 187 S.W.3d 771, 775 (Tex. App.—Texarkana 2006, pet. struck). Section 22.01 only requires that "the defendant intentionally or knowingly threatened another with imminent bodily injury." *Dobbins v. State*, 228 S.W.3d 761, 769 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd, untimely filed). The threatening gesture would constitute a separate offense. *Tidwell*, 187 S.W.3d at 775 ("Threats may be communicated verbally as well as communicated by conduct.").

Nonetheless, the record reflects sufficient evidence of all the elements of burglary with an assault by threat. Durgin was actually inside Salih's house. Salih testified that Durgin was holding a machete and testified that Durgin said he was going to kill Salih.

Therefore, the record reflects sufficient evidence of count two.[8]

---

[8]Since the record reflects sufficient evidence of the first paragraph of the jury charge, we need not address whether the second paragraph is necessarily included in a hypothetically correct jury charge and whether the record reflects sufficient evidence of that manner and means. *See Manrique*, 994 S.W.2d at 642. Amongst other reasons, since the jury acquitted Durgin of aggravated assault with a deadly weapon in count three on the same facts, it cannot be considered in a hypothetical correct jury charge.

19

## V. Conclusion

We sustain Durgin's second point of error. We remand this matter to the trial court for further proceedings on count two not inconsistent with this opinion.[9]

Jeff Rambin
Justice

Date Submitted: May 21, 2025
Date Decided: May 28, 2026

Do Not Publish

---

[9]Since the foregoing is dispositive, we do not address the third point of error.

20